IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Samuel Eakes, | ) | C/A No. 1:11-571-JMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Robert Samuel Eakes is an inmate at the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C. for a Report and Recommendation on Respondent's motion for summary judgment and return. [Entry #28, #29]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #30]. Petitioner file a timely response in opposition to Respondent's motion. [Entry #36]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment [Entry #28] be granted.

I.     Factual and Procedural Background

In September 2003, Petitioner was charged in Greenville County with assault and battery with intent to kill ("ABWIK"), kidnapping, and criminal sexual conduct first

degree (CSC). [Entry #29-5 at 52–55].  He was also subsequently indicted in May 2004 for malicious injury to real property. [Entry #29-5 at 56–57]. All charges stemmed from the same series of events beginning on July 12, 2003.

The victim in this case was Petitioner's ex-wife, who testified that she had been with Petitioner on July 12, 2003, from approximately 1 p.m. that day doing drugs. [Entry #29-1 at 35–39].  The two eventually returned to the victim's home, which she shared with her mother. The victim testified that after her mother left for work at approximately 6:30 p.m., that she gave Petitioner a beer, and he watched television while she fell asleep on the couch. [Entry #29-1 at 40–41].  She testified that she awoke to Petitioner attempting to strangle her, that a fight ensued, ending up in a bathroom where Petitioner tried to drown her. [Entry #29-1 at 41–45]. The victim testified that Petitioner eventually calmed down, announced they would have sex, and that she did not protest. [Entry #29-1 at 50–52]. At some point during the night while victim was asleep, Petitioner wrote various statements on her bedroom wall in her lipstick, including, "I love you. But that won't stop me from killing you." [Entry #29-1 at 58–59]. The victim testified that she had kept letters from a prior relationship with another man, and these letters were around the chair that Petitioner had been sitting in prior to the violence. She testified that Petitioner's discovery of the letters may have been the cause of the violence. [Entry #29-1 at 55–56]. Petitioner left the house at approximately 6:30 the following morning. [Entry #29-1 at 52–53].

Petitioner testified in his defense, admitting having been with the victim that day, smoking crack cocaine. [Entry #29-1 at 106–114, 119–124]. He admitted fighting with her, accidentally poking her in the eye, and choking her. He testified that the fight spilled over into the bathroom, where they both were dunked in water. [Entry #29-1 at 135–140, 156]. He admitted having sex with her, which he testified was consensual. [Entry #29-1 at 141–148, 156]. He claimed that the victim was not herself because of her drug use, that he intended to point at her while telling her not to trade sex for drugs, but accidentally poked her in the eye. He testified that she attacked him and he fought back. [Entry #29-1 at 135–140]. He admitted having read the letters and messages from her old boyfriend [Entry #29-1 at 124–128], being upset with hearing she was trading oral sex for drugs [Entry #29-1 at 135], and, further, admitted writing the messages on the bedroom wall [Entry #29-1 at 130–131, 125, 152]. Multiple witnesses testified to signs of a physical altercation, damage to the home, and significant injuries to the victim, including her left eye having swollen to the size of a grapefruit or a softball. [Entry #29-1 at 125–137].

Petitioner was represented at trial by Dorothy A. Manigault, Esq. The State noticed Petitioner of its intent to seek a life without parole ("LWOP") sentence under the state recidivist statute. [Entry #29-3 at 61]. After a jury trial on September 14–15, 2004 before the Honorable C. Victor Pyle, Jr., the jury acquitted Petitioner on the CSC charge, but convicted on the lesser offense of assault and battery of a high and aggravated nature ("ABHAN"), and kidnapping, and malicious injury to real property. [Entry #29-3 at 58]. Judge Pyle sentenced Petitioner to LWOP for kidnapping pursuant to the state recidivist

statute, 10 years consecutive for ABHAN, and 30 days consecutive for malicious injury to real property. [Entry #29-3 at 62].

Petitioner filed a direct appeal in the South Carolina Court of Appeals in which he was represented by Appellate Defender Eleanor Duffy Cleary of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. Petitioner's final brief was filed on October 16, 2006, and raised the following issue: Whether the trial court erred in refusing to order a new trial where his instructions to the jury improperly commented upon the facts of the case and prejudiced appellant? [Entry #29-5 at 39].

On March 6, 2007, the Court of Appeals issued an unpublished opinion affirming the convictions. [Entry #29-5 at 48–50]. Petitioner did not seek rehearing and did not seek further review by the Supreme Court of South Carolina. The South Carolina Court of Appeals issued the remittitur on March 22, 2007. [Entry #29-5 at 51].

On July 25, 2007, Petitioner filed an application for post-conviction relief ("PCR") and was represented by Susannah Ross, Esq., who raised claims for ineffective assistance of trial and appellate counsel. [Entry #29-3 at 65–72]. An evidentiary hearing was held September 25, 2008, before the Honorable Carmen T. Mullen, who issued a formal written order of dismissal on October 23, 2008. [Entry #29-5 at 21–28]. On November 7, 2008, Petitioner filed a motion to alter or amend judgment, which Judge Mullen denied on February 3, 2009. [Entry #29-5 at 34–35].

Petitioner appealed and was represented by Lanelle Cantey Durant, Appellate Defender of the South Carolina Commission on Indigent Defense, Division of Appellate

Defense. Petitioner filed a petition for writ of certiorari in the Supreme Court of South Carolina on August 24, 2009, raising the following issues:

1.    Did the PCR court err in failing to find trial counsel ineffective for not objecting to hearsay testimony by three witnesses regarding statements by the victim to them which went beyond time and place?

2.    Did the PCR court err in failing to find trial counsel ineffective for not objecting to the admission of the 911 tape which contained prejudicial hearsay that petitioner had murdered two people in Florida and murdered some people in South Carolina?

3.    Did the PCR court err in failing to find trial counsel ineffective for not objecting to the admission of petitioner's prior conviction for voluntary manslaughter?

4.    Did the PCR court err in failing to find trial counsel ineffective for not performing a thorough investigation when petitioner was facing a life without parole sentence?

[Entry #29-7 at 3].

The Supreme Court denied the petition on January 7, 2011, and the remittitur issued on January 25, 2011. [Entry #29-9, #29-10]. This federal habeas petition followed.

II.    Discussion

    A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

Ground One:    Ineffective Assistance of Counsel in violation of the Sixth Amendment of the United States Constitution.

    Supporting Facts: Trial counsel was ineffective for not objecting to hearsay testimony that had substantial and injurious effect, and influence in determining the jury's verdict. That counsel's error prejudiced petitioner's defense to the extent that he was deprived of a fair trial. Also arguing the combined effect of the hearsay testimony which came from three separate witnesses.

Ground Two:    Ineffective Assistance of Counsel in violation of the Sixth Amendment of the United States Constitution.

Supporting Facts: Trial counsel was ineffective for not objecting to the admission of a 911 tape which contained false and prejudicial hearsay that petitioner had murdered two people in Florida and some people in South Carolina. That the hearsay testimony had substantial and injurious effect and influence in determining the jury's verdict. Moreover, counsel's errors prejudiced petitioners defense to the extent that he was deprived of a fair trial.

Ground Three:    Ineffective Assistance of Counsel in violation of the Sixth Amendment of the United States Constitution.

Supporting Facts: Trial counsel was ineffective for not objecting to the admission of petitioner's prior conviction for voluntary manslaughter which had substantial and injurious effect and influence in determining the jury's verdict. That counsel's error prejudiced petitioner's defense to the extent that he was deprived of a fair trial.

Ground Four:    Ineffective Assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

Supporting Facts: Trial counsel was ineffective for not performing a thorough investigation when petitioner was facing a life without parole sentence. That counsel's error prejudiced petitioner's defense to the extent that he was deprived of a fair trial.

[Entry #1 at 6–11].

B.    Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254 ("Section 2254").  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires

8

that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

> (c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.  State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).  If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[1]  Furthermore, strict time deadlines govern

---

[1]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in

direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[2] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal

_____

which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[2]If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must

also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

    D.    Analysis

        1.    Procedurally-Barred Grounds

As an initial matter, Respondent contends that the second portion of Petitioner's Ground One and all of Ground Four are procedurally-barred to the extent that they were not raised in a direct appeal or PCR appeal.  The undersigned agrees.

In the second portion of Ground One, Petitioner claims cumulative prejudicial effect of several witnesses' testimony.  In Ground Four, Petitioner claims counsel was ineffective in failing to perform a thorough investigation in light of Petitioner's facing a LWOP sentence. These two issues were not raised in the PCR, argued during the PCR proceeding, nor addressed by the PCR order.  Petitioner did not seek a ruling by filing a Rule 59(e) motion. Under state court procedure, the state supreme court has held that such issues are not preserved for consideration on appeal. *Marlar v. State*, 653 S.E.2d 266, 266 (S.C. 2007); *Simpson v. Moore*, 627 S.E.2d 701, 708 n.3 (S.C. 2006).

Therefore, to the extent that the second portion of Petitioner's Ground One and all of Ground Four were not raised in Petitioner's PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review.  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

2.    Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of these grounds. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, they are procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (In order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.); *Wainwright v. Sykes,* 433 U.S. at 88–91; *Murray v. Carrier*, 477 U.S. 478 (1986); *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray v. Carrier*, 477 U.S. at 496); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply

with the State's procedural rule. *Murray v. Carrier*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on his grounds. Petitioner had a guilty plea in which he raised no objection, was advised of his right to file a direct appeal, but did not file one, had a PCR hearing, and an appeal from the PCR in which to raise these claims. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve these specific issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.*  The court's review of the record does not support a showing of actual innocence.

Petitioner testified in his own defense and admitted to hitting and choking the victim.  The victim's injuries were proven by medical testimony and photographs. Petitioner admitted to writing on the victim's bedroom wall, including the statement, "I love you. But that won't stop me from killing you." The victim did not call for help or leave until Petitioner left the house. Her mother testified that victim was on the phone when she arrived at approximately 7:15 a.m., and multiple witnesses testified to signs of a

16

physical altercation, damage to the home, and significant injuries to the victim, including her left having been swollen to the size of a grapefruit or a softball. [Entry #29-1 at 123–124].

In light of the foregoing, Petitioner cannot show actual innocence. Because Petitioner cannot establish actual innocence, the procedural bars apply as to the second portion of Ground One and all of Ground Four.

3.    Merits Review

a.    First Portion of Ground One

In the first portion of Ground One, Petitioner alleges trial counsel was ineffective for not objecting to hearsay testimony, and that the prejudice was enhanced by the cumulative effect of having the following three witnesses testify to the same hearsay: Deputy Lunge, paramedic Wilson, and nurse Sandahl. Each witness briefly related the victim's statement that Petitioner injured her. Because Petitioner did not specifically raise on appeal the issue of the cumulative prejudicial effect of the witnesses' testimony, it has been procedurally defaulted, as stated above. Petitioner raised only the "failure to object to hearsay" claim in his petition for writ of certiorari in the PCR appeal (Cert. Pet., pp. 4-8), which the undersigned reviews on its merits below.

Each witness testified that the victim stated that Petitioner choked and beat her, then sexually assaulted her. She stated the time of the events to the deputy as after her mother went to work and "during the course of the evening," and, to the paramedic, as "around 4:00 in the morning until around 7:00 in the morning." To the nurse, she reported

17

that her husband had assaulted her "numerous times over the span of several hours." [Entry #29-1 at 123–124, 132–133, 141].

At the PCR evidentiary hearing, trial counsel testified that she did not consider the testimony prejudicial to Petitioner, noting that the victim's injuries were shown to the jury by way of a photograph and noting that the jury clearly did not believe all of her testimony, or, alternatively, credited some of Petitioner's testimony, because the jury found him guilty of the lesser-included offense of ABHAN and acquitted him of the CSC charge.

The PCR court found that Petitioner had not meet his burden of proof in showing counsel performed deficiently:

> The Applicant alleges trial counsel should have objected to hearsay testimony from medical personnel. (Trial transcript, pp. 120-121; p. 129; p. 141). This Court finds there was no error in this regard. This Court agrees with trial counsel, in any event, testimony about the victim's injuries was not as damaging as the pictures of the injuries admitted at trial. This Court agrees with trial counsel that, in any event, testimony about the victim's injuries was not as damaging as the pictures of the injuries admitted at trial. This Court notes  the jury clearly did not completely believe the victim, as they convicted the Applicant of the lesser-included offense of assault and battery of a high and aggravated nature and acquitted him of the criminal sexual conduct charge.

[Entry #29-5 at 26].

The PCR judge fairly and reasonably resolved Petitioner's claim based on the facts of record.  As an initial matter, it is debatable whether the testimony was hearsay such that an objection by trial counsel would have been proper and sustainable.  There is an express exception to the time and place testimony when the testimony is based on a

statement from an alleged sexual assault victim in Rule 801(D) S.C.R.E.; *see also Jolly v. State,* 443 S.E.2d 566, 568 (S.C. 1994)("in criminal sexual conduct cases, when the victim testifies, evidence from other witnesses that she complained of the sexual assault is admissible in corroboration, limited to the time and place of the assault and excluding details or particulars"). Also, the paramedic and nurse's testimony of the victim's statements about the assaults would also be admissible under the hearsay exception for statements made in seeking medical treatment in Rule 803 (4), S.C.R.E.; *see also State v. Burroughs,* 492 S.E.2d 408, 414 (S.C. App. 1997)("Certainly, a statement that the victim had been raped or that the assailant had hurt the victim in a particular area would be pertinent to the diagnosis and treatment of the victim."). The fact that Petitioner was acquitted on the CSC charge reflects that the jury did not credit all of the victim's testimony, and therefore, Petitioner's claim that the witnesses' hearsay testimony unduly bolstered the victim's testimony is without support in the record.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Petitioner has not shown that counsel's performance was deficient by having made errors so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Any objection based on hearsay is questionable at best, and certainly not so deficient and prejudicial such that the Petitioner was deprived of a fair trial.

19

After careful review of the record and the arguments presented, the undersigned finds that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard. *Smith v. North Carolina*, 528 F.2d 807, 809 (4th Cir. 1975). The undersigned recommends the court deny Petitioner relief on the first portion of Ground One, as the state courts' denial of this claim was not clearly unreasonable for purposes of § 2254(d).

                 b.      Ground Two

Petitioner next argues counsel was ineffective in failing to object to the 911 call being played for the jury and prejudiced because the call contained the victim's statements that indicated Petitioner had murdered people in Florida and South Carolina.[3] The PCR court found that counsel had no basis to object to the tape and the tape was relevant and admissible: "The 911 call was made the morning after the incident and would have been far more probative than prejudicial in this case. See Rule 403, SCRE." [Entry #29-5 at 25].

Respondent argues that the taped statements did not constitute hearsay under S.C.R.E. 801(c) because they were not offered for the truth of the matter asserted. Specifically, Respondent argues that the statements were not offered to prove that Petitioner murdered anyone; rather they were offered to show victim's fear of Petitioner and as the reason she felt compelled to stay in the house after the assault began and to comply with Petitioner's demand for sex. Respondent further argues that because the call

---

[3] The transcript of the 911 call is available at Entry #29-4 at 76–78.

was made immediately after Petitioner left the house, it would qualify as an excited utterance exception to the hearsay rule under S.C.R.E. 803(2). The PCR court found the timing of the call, having been made immediately after Petitioner left the house, enhanced its probative value. [Entry #29-5 at 25].

After reviewing the record, the undersigned cannot find that the state court unreasonably applied state law under these circumstances in finding no basis for objection to the 911 call. Without a valid basis for objecting, Petitioner cannot demonstrated deficient performance and Petitioner can show no prejudice from trial counsel's failure to object. *See Hough v. Anderson*, 272 F.3d 878, 897 (7th Cir. 2001) ("An ineffective assistance claim based on a failure to object is tied to the admissibility of the underlying evidence. If evidence admitted without objection was admissible, then the complained of action fails both prongs of the *Strickland* test; failing to object to admissible evidence cannot be a professionally 'unreasonable' action, nor can it prejudice the defendant against whom the evidence was admitted."). Additionally, the court notes that Petitioner himself testified that he had, in fact, been incarcerated for manslaughter and attempted murder. [Entry #29-3 at 1]. Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 410 (2000). Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground and it is recommended that it be dismissed.

c.    Ground Three

In Ground Three, Petitioner argues counsel should have objected to the ruling that his prior conviction for manslaughter was admissible for impeachment. [Entry #1 at 9]. The trial court held an in-camera hearing on Petitioner's decision to testify and on the admissibility of the manslaughter conviction, as well as his conviction for attempted murder and petit larceny. [Entry #29-2 at 94–96].  Trial counsel made no argument that the manslaughter conviction was inadmissible. At the PCR hearing, trial counsel testified that she had previously reviewed Petitioner's prior convictions with him, that he appeared to understand that the prior convictions could be used in impeachment, and that she did not object because she saw no basis in law to argue they could not be used. [Entry #29-4 at 56].

The PCR court found ". . . trial counsel had reviewed the Applicant's prior record and rightfully found there was no basis to object to those convictions being mentioned at trial. See Rule 609, SCRE." [Entry #29-5 at 25-26]. S.C.R.E. 609(a) provides that "evidence that an accused has been convicted of such a crime (punishable by death or imprison in excess of one year) shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and evidence that any witness had been conviction of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."

Petitioner's reliance on *State v. Colf*, 525 S.E.2d 246, 248 (S.C. 2000) is misplaced, as that case applied to convictions more than ten years old and the balancing

22

test in Rule 609(b), which has a presumption against admissibility. At issue here is Rule 609(a), which bears no such presumption against admissibility and provides that a defendant is subject to impeachment when he takes the stand.

Further, in light of Petitioner's challenge only to the manslaughter conviction, and not the attempted murder conviction, the court finds the objection to the manslaughter conviction reference even less prejudicial in light of the entire record.  The undersigned finds Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams v. Taylor*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief and the undersigned recommends the court deny relief on Ground Three.

III.    Conclusion

For the foregoing reasons, the undersigned recommends Respondent's motion for summary judgment [Entry #28] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 17, 2012                                    Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).